United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA DARENSBURG, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>METROPOLITAN TRANSPORTATION<br>COMMISSION,<br><br>            Defendant. | No. C-05-01597 EDL<br><br>**OPINION ON DEFENDANT'S MOTION<br>FOR ATTORNEYS' FEES** |

Plaintiffs Sylvia Darensburg and Vivian Hain are individuals of color, and Plaintiffs Amalgamated Transit Union 192 ("ATU 192") and Communities for a Better Environment ("CBE") are organizations with minority members, who use the bus system of the Alameda-Contra Costa Transit District ("AC Transit"). Defendant Metropolitan Transportation Commission ("MTC") is the Metropolitan Planning Organization ("MPO") for all twenty-six independent transit operators in the nine-county Bay Area. In this class action, Plaintiffs contended that MTC made funding decisions that adversely affected AC Transit's largely minority riders, in comparison to the riderships of the six other largest transit operators in the Bay Area.

On August 21, 2008, the Court issued an order resolving the parties' motions for summary adjudication and for summary judgment. The Court denied Plaintiffs' Motion for Summary Adjudication on the issue of whether Plaintiffs had established as a matter of law a prima facie case for disparate impact discrimination arising out of MTC's failure to fund the operating shortfalls it identifie in the quadrennial Regional Transportation Plans, while funding capital shortfalls. The Court granted in part and denied in part MTC's Motions for Summary Judgment, holding that there

were triable issues of fact as to standing and disparate impact discrimination, but that there was no triable issue of fact as to intentional discrimination.

This matter was tried to the Court over a three week period in October 2008. At trial, Plaintiffs contended that three of MTC's apparently neutral transportation funding practices in fact diverted funding from preserving and improving bus operations to costly expansion and capital rehabilitation of rail services, disproportionately harming AC Transit's predominantly minority bus riders, in violation of California Government Code section 11135. On March 27, 2009, the Court issued its Findings of Fact and Conclusions of Law, holding that Plaintiff had not proven disparate impact discrimination in violation of section 11135.[1] The Court entered judgment in favor of MTC on the same day.

On May 1, 2009, MTC filed a Motion for Attorneys' Fees, which was fully briefed by May 26, 2009. MTC sought fees from ATU 192 and CBE on the ground that the intentional discrimination claim brought under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, and the Equal Protection Clause was frivolous, unreasonable or without merit. In addition, MTC sought fees from CBE on the ground that a 2004 settlement agreement precluded CBE from pursuing this litigation. MTC also sought fees incurred in bringing the Motion for Attorneys' Fees. On May 27, 2009, the Court denied MTC's Motion. This Opinion sets forth the basis for the Court's denial of MTC's Motion.

**DISCUSSION**

A court may award attorney's fees to a prevailing civil rights defendant if the court finds that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christianburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 422 (1978). "An action becomes frivolous when the result appears

---

[1] On April 14, 2009, the Court received a letter from trial witness H.E. Christian Peeples that was copied to all counsel, requesting that the Court review its findings of fact numbers 159 and 195. To the extent that Mr. Peeples's request may be construed as a motion to amend findings pursuant to Federal Rule of Civil Procedure 52(b), the Court notes that Rule 52(b) contemplates a motion by a party, not a request by a witness. The parties have not joined in Mr. Peeples's request, or otherwise commented on his letter. However, the Court has sua sponte reviewed findings of fact 159 and 195, and has determined that fact number 159 inadvertently omitted the adjective "major" in its third sentence, and amends fact 159 to make this correction: ". . . Because there is no major transit service in that corridor, VTA wanted to fill that gap. . . ."

2

1    obvious or the arguments are wholly without merit." Galen v. County of Los Angeles, 477 F.3d
2    652, 666 (9th Cir. 2007) (citing Christianburg, 434 U.S. at 422). A defendant can recover fees if the
3    plaintiff runs afoul of this standard at any point in the litigation. See Christianburg, 434 U.S. at 422.
4    A court must "resist the understandable temptation to engage in *post hoc* reasoning by concluding
5    that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or
6    without foundation." Christianburg, 434 U.S. at 421-22. Moreover, the denial of fee awards to
7    defendants following a grant of a motion to dismiss or summary judgment in favor of defendants is
8    common. See, e.g., Gibson v. Office of Att'y Gen., State of Cal., 561 F.3d 920, 929 (9th Cir. 2009);
9    Summers v. Teichart & Son, Inc., 127 F.3d 1150, 1154 (9th Cir. 1997); Parks School of Business,
10   Inc. v. Symington, 51 F.3d 1480, 1489 (9th Cir. 1995). Importantly, a plaintiff's "inability to defeat
11   summary judgment does not mean that [the] claims were groundless at the outset." Karam v. City of
12   Burbank, 352 F.3d 1188, 1196 (9th Cir. 2003) (citing Mitchell v. Office of Los Angeles County, 805
13   F.2d 844, 847 (9th Cir. 1986)).

14   In Galen, the district court granted summary judgment in favor of all the defendants on the
15   plaintiff's claim that the defendants had imposed excessive bail for the plaintiff's domestic violence
16   arrest. See Galen, 477 F.3d at 656. The district court also awarded attorney's fees to the individual
17   police officer defendants and the County defendant. Id. at 658. The Ninth Circuit reversed the
18   award of fees to the individual defendants because pursuit of those claims was not barred by
19   controlling Ninth Circuit or Supreme Court authority, but affirmed the award as to the County
20   defendant for its continued pursuit despite the failure to uncover any evidence of the requisite policy
21   or practice of setting excessive bail or failure in training. To the contrary, discovery revealed
22   evidence that the County's policies were consistent with state bail law, which directly disproved an
23   essential element of the plaintiff's Monell claim. Id. at 667-68 ("Based on the evidence Galen
24   acquired during discovery, it was obvious that he could not meet his burden of demonstrating that
25   the County's deliberate conduct was the moving force behind the alleged constitutional violation.").

26   Plaintiffs' intentional discrimination claim does not satisfy the Christianburg standard. MTC
27   argues that Plaintiffs' intentional discrimination claim was frivolous from the outset, or at least by
28   November 1, 2005 when MTC filed its Amended Motion to Dismiss, or by December 2007 when

3

discovery closed. The Court concludes, however, that at no time during the litigation of this case did it become sufficiently obvious that the intentional discrimination claim lacked merit to justify shifting fees.

Plaintiffs' original complaint alleged intentional discrimination based in part on the allegations that MTC failed to fund a bus route in Richmond and failed to adequately fund a free school bus pass program for AC Transit riders. See Compl. (docket no. 1) at ¶¶ 42-46. Plaintiffs also alleged that the disparity in the subsidy per passenger trip among AC Transit, BART and Caltrain riders showed intentional discrimination. See id. ¶¶ 40-41. Even if, as MTC argues, none of these factual allegations had merit, the Court cannot conclude that Plaintiffs' entire intentional discrimination claim, which rested on other bases as well, was frivolous at the outset or at the time of MTC's Amended Motion to Dismiss. MTC argues that Plaintiffs knew that these factual allegations were without merit as early as November 1, 2005, when MTC filed its Amended Motion to Dismiss together with a Request for Judicial Notice of several documents that MTC proffered on lack of intent. The documents, however, did not establish that Plaintiffs' intent claim was wholly without merit, as explained below. Moreover, with respect to the Request for Judicial Notice, the Court rejected MTC's position that the documents established lack of intent because it could not "conclusively determine from the exhibits alone, without some interpretative testimony from witnesses or experts," the significance of the documents, and declined to draw "the complex *inferences* that Defendant would have it draw from the facts contained in those documents." See Order Denying MTC's Mot. to Dismiss (docket No. 62) at 3-4 (emphasis in original) (granting the request for judicial notice, but only as to the existence of the documents and the facts contained therein). More importantly, the Court denied MTC's Amended Motion to Dismiss, which tends to show that Plaintiffs' claims were not frivolous. See Herb Hallman Chevrolet, Inc. v. Nash-Holmes, 169 F.3d 636, 645 (9th Cir. 1999) ("The claim had survived an earlier motion to dismiss which this Court recognizes as evidence that the claim is not without merit.").

Specifically, MTC argues that Plaintiffs' allegations regarding the Richmond Bus Route were without merit because the evidence showed that the bus route was funded as the 30Z bus operated by WestCat. However, as Plaintiffs point out, it is at a minimum debatable whether the

4

30Z bus route was the same as the Richmond bus route, which remained unfunded. MTC's own documents in its Request for Judicial Notice in support of its Amended Motion to Dismiss state that the Richmond bus route was projected to run along the I-80 corridor (see Bockelman Decl. (docket no. 47) Ex. L at 9), but the evidence also shows that the 30Z bus route runs along State Route 4 (see id. Ex. H at 15).

MTC argues that Plaintiffs' initial allegations regarding the School Bus Pass Program were without merit and should not have been maintained in Plaintiffs' second amended complaint filed in November 2007 because discovery showed that MTC provided $1 million in funding to the Program, that MTC did not provide any other operator with this free service, and the School Bus Program was poorly conceived. See, e.g., Veit Decl. (docket no. 182) Ex. F at 49:12-14; Bockelman Decl. (docket no. 47) Ex. M. As Plaintiffs point out, however, rather than alleging that MTC failed to fund the Program, they alleged that MTC failed to *adequately* fund that Program. See First Am. Compl. ¶¶ 50, 57; Second Am. Compl. ¶¶ 54, 61 (emphasis added). Further, Plaintiffs provided documents in its own Request for Judicial Notice in connection with MTC's Amended Motion to Dismiss showing that AC Transit sought approximately $11.9 million from MTC over three years for the School Bus Pass Program (see Pls.' Opp. to Req. for Jud. Notice at Ex. B), but MTC allocated only $1 million per year for two years (see Def.'s Req. for Jud. Notice Ex. M).

In addition, MTC argues that Plaintiffs were on notice that comparisons between AC Transit on the one hand, and BART and Caltrain on the other hand, in terms of subsidy per passenger trip were unreasonable. However, as Plaintiffs point out, after trial, the Court noted that different criteria were applied to bus projects than to rail projects and that the project selection process for Resolution 3434 caused a disparity in funding for rail projects as opposed to bus projects. See Findings of Fact and Conclusions of Law (docket no. 392) at 64-65. Thus, a comparison between bus and rail operators is not wholly without merit, although the Court determined that the comparison should be based on the top seven largest operators, rather than only AC Transit, BART and Caltrain.

More importantly, even if these particular factual allegations were incorrect, in Arlington Heights, the Supreme Court instructed courts to examine the totality of the circumstances in determining whether to grant a defendant summary judgment against a claim of intentional

discrimination claim. See Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 266 (1977). Although Plaintiffs conceded at summary judgment that there was no direct evidence of intentional discrimination, "the absence of direct evidence of discriminatory intent does not mandate summary judgment." Lindsey v. SLT Los Angeles LLC, 447 F.3d 1138, 1152 (9th Cir. 2006). Here, Plaintiffs presented evidence in support of the Arlington Heights standard, including the discriminatory effect of MTC's actions, the historical background of inadequate transit funding, MTC's departure from substantive norms and mandatory policies by failing to preserve the existing bus service and prioritizing expansion of rail over expansion of bus services, and MTC's departure from procedural norms by, for example, not providing minority participants with the information and analysis necessary to meaningfully participate in the decision-making process. See Aug. 21, 2008 Order at 33-34. While the Court held that the evidence was insufficient to create a triable issue of fact of discriminatory motive, Plaintiffs introduced more evidence in support of this claim than, for example, the unsuccessful plaintiff in Galen. MTC has not demonstrated that the totality of the factual record shows that it was obvious when discovery closed that the intent claim was wholly without merit. See Marbled Murrelet v. Babbitt, 182 F.3d 1091, 1096 (9th Cir. 1999) (denying fees to the defendant where there was no evidence developed in the litigation that should have put the plaintiff on notice that its suit was frivolous).

Finally, MTC argues that Plaintiffs should have known that Golden Gate Transit, whose ridership is predominantly white, had service cuts and budget woes similar to those of AC Transit, thereby refuting any claim of discriminatory intent. In its order on summary judgment, the Court found that MTC's treatment of Golden Gate Transit was inconsistent with a finding of discriminatory intent. See Aug. 21, 2008 Order at 35 ("While the Court is cognizant that intentional discrimination can be subtle and has not been eradicated from society, it would strain credulity to infer that Defendant is motivated by racial discrimination to harm AC Transit's minority riders by not covering operating shortfalls, yet allows Golden Gate Transit's largely white riders to suffer steep cuts in service instead of covering its operating shortfalls."). MTC argues that at least as of December 2007 when discovery closed, Plaintiffs knew that Golden Gate Transit had fared worse than AC Transit, yet they pursued their intentional discrimination claim. But Plaintiffs point out

correctly that under Arlington Heights, the Court was required on summary judgment to look at all the relevant circumstances, not just these two operators, and the Court's decision to rule against Plaintiff on this claim does not establish that it was frivolous.

Additional reasons also support the denial of MTC's request for fees associated with the defense of Plaintiffs' intentional discrimination claim. First, Plaintiffs' intentional discrimination claim was inextricably intertwined with the disparate impact claim. See Arlington Heights, 429 U.S. at 266 (disparate impact may provide a starting point for an intentional discrimination analysis). At least some of the evidence presented in support of Plaintiffs' intentional discrimination claim was also presented at trial in connection with the disparate impact claim. See, e.g., Findings of Fact and Conclusions of Law at ¶¶ 116-21; ¶¶ 132-69; at 62-65. Although MTC is correct that a showing of disparate impact is insufficient by itself to show intentional discrimination, evidence of disparate impact is "not irrelevant." Arlington Heights, 429 U.S. at 265. Further, as Plaintiffs point out, MTC has essentially conceded that the two claims were related. See Def.'s Mot. for Atty's Fees at 14 ("It is not possible to parse precisely MTC's counsel's billing statements, in part because much of the work performed was related to both frivolous and non-frivolous claims."). While the inability to separate fees itself does not by itself warrant denial of a fee award, (see Tutor-Saliba v. City of Hailey, 452 F.3d 1055, 1064 (9th Cir. 2006)), it is one factor within the totality of the circumstances that weighs against granting fees.

Further, this case raised complex questions of fact and law with no legal authority directly on point. MTC argues that Plaintiffs' intent claim was foreclosed by settled Supreme Court case law. However, even though the Court applied the established Arlington Heights standard, there were no cases directly on point addressing intentional discrimination in transportation funding under the California statute. Where, as here, "there was very little case law directly apposite," a fee award is inappropriate. See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1489 (9th Cir. 1995).

In addition, while an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of 42 U.S.C. § 1988, the award should not subject the plaintiff to financial ruin. Miller v. L.A. County Bd. of Educ., 827 F.2d 617, 621 (9th Cir. 1987). As the Court noted in its Findings of Fact and Conclusions of Law, it was impressed by the organizational

7

Plaintiffs' dedication to meeting the needs of the class. See Findings of Fact and Conclusions of Law at 3. Although MTC argues that Plaintiffs' financial condition is only relevant to fixing the amount of a fee award and is correct that the Court may not deny fees based *solely* on that factor (see, e.g., Patton v. County of Kings, 857 F.2d 1379, 1382 (9th Cir. 1988) (while "the award should not subject the plaintiff to financial ruin, . . . a district court should not refuse to award attorney's fees to a prevailing defendant . . . solely on the ground of the plaintiff's financial situation.") (quoting Miller, 827 F.2d at 621, n. 5)), the Court may consider Plaintiffs' financial condition as one of several factors in determining whether to award fees. In support of Plaintiffs' argument that a fee award would devastate the organizational Plaintiffs, they filed the declarations of Bill Gallegos, the Executive Director of CBE, and Deborah Johnson, the financial secretary of ATU 192. On June 10, 2009, Plaintiffs filed amended declarations from Mr. Gallegos and Ms. Johnson.

Mr. Gallegos states that CBE is a non-profit environmental health and justice organization whose funding comes primarily from grants, charitable donations and attorney's fees. See Gallegos Decl. ¶¶ 2, 6. CBE does not have a financial reserve that could be used to satisfy a fee award. See id. ¶ 5. CBE began 2009 with unrestricted funds of just over $42,000, which has already been assigned in the 2009 budget. See id. ¶ 9. While MTC notes that CBE's IRS Form 990 from two years earlier shows unrestricted funds in the amount of over $500,000 (see Supp. Decl. of Kimon Manolius ¶ 6; Ex. H), this dated evidence does not show CBE's current ability to satisfy an award of fees and costs. See also Amended Decl. of Bill Gallegos ¶ 12. Revenue from recovered attorney's fees is limited, controlled by the legal department and not permitted to cover the expenses of any other department. See Gallegos Decl. ¶ 12; Am. Gallegos Decl. ¶¶ 14-15. While MTC points to a recent settlement between CBE and two other plaintiffs and a bus manufacturer that provided $6.6 million in attorney's fees (see Supp. Manolius Decl. ¶ 7-8; Ex. I, J), Mr. Gallegos clarified that the settlement allocated to CBE only $156,000 in fees payable over three years. See Am. Gallegos Decl. ¶ 14. MTC also points to information from the State of California stating that CBE's recovery of attorney's fees in cases involving the Safe Drinking Water and Toxic Enforcement Act of 1986 was over $10 million from 2000 to 2008 (see Supp. Manolius Decl. 7-8; Ex. I, J), but evidence from recent years, which more accurately reflects CBE's current ability to pay a fee award, demonstrates

8

that CBE recovered only $80,000 in attorney's fees in 2007 (see Am.Gallegos Decl. ¶ 14), and $126,000 in attorney's fees in 2008 (see id.). Even though CBE has recently obtained relatively modest fee awards, there is no evidence to rebut Mr. Gallegos's statement that legal fees are segregated and not available for other uses. Moreover, MTC seeks a much larger award of fees. Holding CBE liable for MTC's fees in this case would be "financially crushing." See Gallegos Decl. ¶ 13.

Ms. Johnson states that ATU 192 is a labor organization that engages in "such legislative, political, educational, cultural, social, and welfare activities as will further the interests and welfare of the membership of the organization." See Johnson Decl. ¶ 2. As of December 31, 2008, ATU 192 had negative net assets in the amount of -$43,913, and does not have any financial reserves. See id. ¶ 4; Amended Declaration of Deborah Johnson Ex. A. Holding ATU 192 liable for MTC's fees would be "devastating financially to ATU 192 and dramatically impair its ability to carry out its mission of representing its members." See id. ¶ 7. Accordingly, neither organizational Plaintiff can afford to pay any significant award of attorney's fees to MTC in this case.

Finally, MTC's argument that CBE's participation in this litigation was entirely frivolous because of a settlement agreement with MTC does not persuade the Court that attorney's fees should be awarded against it despite its financial condition. In 2002, CBE sued MTC and others over the adoption of the 2001 San Francisco Bay Area Ozone Attainment Plan for the 1-Hour National Ozone Standard in San Francisco Superior Court, alleging that MTC failed to implement a Transportation Control Measure Plan ("TCM") that would achieve the required reduced emissions from transportation sources to meet air quality standards. See Manolius Decl. ¶ 21; Ex. B at MTCP037195-MTCP037215. In March 2004, CBE entered into a settlement agreement resolving that lawsuit. The agreement required MTC to, among other things, prepare annual reports for five years detailing projects and programs that are recipients of MTC's discretionary funding decisions from certain funding sources, including some funds at issue in this case. See Manolius Decl. Ex. B. In consideration, CBE released related claims:

> CBE and TRANSDEF, on behalf of themselves and their respective directors, officers, employees, agents, representatives, successors in interest or assigns, waive, relinquish, and release any and all claims, rights, liabilities, demands, obligations, duties, promises, damages, actions and causes of action of any kind whatsoever,

9

> whether known or unknown, arising under any provision of law to challenge judicially MTC's development, preparation and/or adoption of the 2005 RTP or its EIR.

Id. The agreement also had a general release of all claims "with respect to, pertaining to or arising from the facts of the lawsuit," and a waiver of California Civil Code § 1542, and provided that the agreement could be "pled as a defense by the parties against any action in violation of [the] agreement." See id. At the summary judgment stage, the Court noted that it appeared that most if not all of CBE's claims were barred by the settlement agreement, but "the parties did not address all the permutations of this defense against CBE, so the Court cannot definitively rule out any possibility that this plaintiff has the ability to pursue some aspect of Plaintiffs' case." Aug. 21, 2008 Order at 18. In other words, it was not obvious from the face of the settlement agreement that CBE was entirely barred from proceeding in this case or that its claims were wholly without merit. Even if CBE waived future claims based on the 2005 RTP, this case did not rest entirely on the 2005 RTP. Specifically, Plaintiffs' intentional discrimination and disparate impact claims involving MTC's transit expansion practices under Resolution 3434 did not relate solely to the 2005 RTP, and would not appear to be completely barred by the settlement agreement.

Further, MTC has not made any effort to parse its fees as between the organizational Plaintiffs in this case. Nor is the Court convinced that it could ever do so in a meaningful manner. CBE's involvement in this case did nothing to increase MTC's liability or potential damages in this case because CBE's claims are identical to those of the other organizational Plaintiff.

For these reasons, the Court denied MTC's Motion for Attorneys' Fees by its Order dated May 27, 2009.

Dated: July 7, 2009

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge