IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA DARENSBURG, et al., | No. C-05-01597 EDL |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS AND DENYING AS MOOT DEFENDANT'S MOTION TO REVIEW CLERK'S TAXATION OF COSTS** |
| v. | |
| METROPOLITAN TRANSPORTATION COMMISSION, | |
| Defendant. | |

Following entry of judgment in this case on March 27, 2009, Defendant Metropolitan Transportation Commission ("MTC") filed a Bill of Costs in the amount of $180,774.94, which was subsequently reduced by MTC to $179,167.99. Plaintiffs Sylvia Darensburg, Vivian Hain, Amalgamated Transit Union 192 ("ATU 192") and Communities for a Better Environment ("CBE") filed an opposition to the Bill of Costs. On June 16, 2009, the Clerk taxed costs for MTC in the amount of $45,747.08.

On June 23, 2009, both parties filed motions to review the Clerk's taxation of costs. Plaintiffs argue in their motion that the Court should decline to award costs based on several factors, including Plaintiffs' poor financial condition. MTC asks the Court in its motion to award $117,178.83 in costs in addition to the amount already taxed by the Clerk. MTC has clarified that it seeks to tax costs only against the organizational Plaintiffs. Both motions have been fully briefed. Because these matters are appropriate for decision without oral argument, the Court vacated the July 28, 2009 hearing. For the reasons stated below, Plaintiffs' Motion for Review of Clerk's Taxation of Costs is granted, and Defendants' Motion to Review Clerk's Taxation of Costs is denied as moot.

**Plaintiffs' Motion for Review of Taxation of Costs**

Costs other than attorneys' fees should be awarded to a prevailing party unless a statute, rule or court order provides otherwise. Fed. R. Civ. P. 54(d)(1). This rule creates a presumption in favor of awarding costs to a prevailing party, but vests discretion in the district court to refuse to award costs. See Association of Mexican-American Educators v. California, 231 F.3d 572, 591 (9th Cir. 2000) (en banc) (citing National Info. Servs., Inc. v. TRW, Inc., 51 F.3d 1470, 1471 (9th Cir. 1995)). A district court must "specify reasons" for its refusal to award costs. Mexican-American Educators, 231 F.3d at 592 (quoting Subscription Television, Inc. v. Southern Cal. Theatre Owners Ass'n, 576 F.2d 230, 234 (9th Cir. 1978)).

The Ninth Circuit has approved several reasons for denying an award of costs: (1) the losing party's limited financial resources; (2) misconduct on the part of the prevailing party; (3) the chilling effect of imposing high costs on future civil rights litigants; (4) the public importance of the issues in the case; (5) the closeness and difficulty of the issues in the case; and (6) the merit of the plaintiff's case. Mexican-American Educators, 231 F.3d at 592; National Organization for Women v. Bank of California, National Association, 680 F.2d 1291, 1294 (9th Cir. 1982) (finding that the district court did not abuse its discretion in denying some costs in view of the plaintiffs' limited budgets); see also Schaulis v. CTB/McGraw-Hill, Inc., 496 F. Supp. 666, 680 (N.D. Cal. 1980) (denying costs where an award of costs would "lead to a harsh result when plaintiff is an individual litigant and defendant is a large corporation," where the case had been "vigorously litigated," and where an award of costs would "chill individual litigants of modest means seeking to vindicate their individual and class rights under the civil rights laws."); Grimes v. United Parcel Serv., 2008 WL 4622589, at *2 (N.D. Cal. Oct. 17, 2008) (denying costs after finding that an award of costs would chill civil rights litigation and would create a harsh result, that the case was vigorously litigated by an individual plaintiff against a large corporate defendant, and that there was a great disparity in the financial resources of the parties). These reasons do not constitute an exhaustive list. Mexican-American Educators, 231 F.3d at 593. A finding of misconduct on the part of the prevailing party is not required to deny an award of costs. Id. at 592.

2

1    MTC points to cases in which courts have awarded costs to prevailing defendants in civil
2 rights litigation, but those cases involved relatively small awards that did not pose a risk of chilling
3 future litigation. See Save Our Valley v. Sound Transit, 335 F.3d 932, 945 (9th Cir. 2003)
4 ($5,310.55); Estate of Le Blanc v. City of Lindsay, 2007 U.S. Dist. LEXIS 76428, at *10 (E.D. Cal.
5 Sept. 28, 2007) ($8,460.21); Sorgen v. City of San Francisco, 2007 U.S. Dist. LEXIS 14489, at *8-
6 10 (N.D. Cal. Feb. 15, 2007) ($4,987); Ardalan v. Monterey Institute of Int'l Studies, 2004 U.S.
7 Dist. LEXIS 18765, at *12-14 (N.D. Cal. Sept. 14, 2004) ($2,838.35). By contrast, larger cost
8 awards, such as that sought by MTC in this case, have been denied to prevailing defendants based on
9 a combination of the reasons cited above. See Mexican-American Educators, 231 F.3d at 591
10 ($216,443.67); Bowoto v. Chevron Corp., 2009 WL 1081096, at *2 (N.D. Cal. Apr. 22, 2009)
11 ($485,159.49); Washburn v. Fagan, 2008 WL 361048, at *2 (N.D. Cal. Feb. 11, 2008) ($16,268.71).
12 In this case, there are several reasons that justify declining to award the costs taxed by the Clerk and
13 denying any additional cost award.
14    First, Plaintiffs raised issues of substantial importance in this case. See Mexican-American
15 Educators, 231 F.3d at 593 (the use of the CBEST test as a requirement to teach in California was an
16 issue of "the gravest public importance"); Stanley v. University of So. Cal., 178 F.3d 1069, 1080
17 (9th Cir. 1999) (an individual employment discrimination case under the Equal Pay Act raised
18 "important issues and that the answers were far from obvious"); Washburn, 2008 WL 361048, at *2
19 (a civil rights case against the San Francisco police department raised "important issues" and there
20 was a "great public concern for the issues underlying Defendants' behavior"). Here, Plaintiffs
21 brought this class action case alleging race discrimination in transit funding in the San Francisco
22 Bay Area on behalf of tens of thousands of minority riders of AC Transit. Second Am. Compl. ¶ 27;
23 Second Am. Compl. at Prayer for Relief ¶¶ 5-6. Further, the impact of the transportation issues on
24 the lives of the Plaintiff class was serious. See, e.g., Mar. 27, 2009 Findings of Fact and
25 Conclusions of Law (docket no. 392) at 3 ("Second, the Court was also impressed by the sincere
26 dedication to meeting the needs of disproportionately minority riders of AC Transit on the part of
27 Plaintiffs and their witnesses. The Court was left with no doubt that AC Transit's bus riders would
28 benefit from additional service and that many of them are burdened by fare hikes and service cuts,

3

hampering their efforts to get to work, medical appointments, and grocery shopping and to meet other important needs.").

MTC argues that this factor does not support waiver of costs where MTC, rather than Plaintiffs, vindicated the true public interest in this case because it fended off Plaintiffs' claims which would have benefitted AC Transit at the expense of other Bay Area transit operators. However, the public also has an important interest in ensuring non-discriminatory funding. Further, determining the importance of the issues by looking at which party prevailed is not supported by caselaw.

Second, an award of costs in this case would have a chilling effect on future civil rights litigation. See, e.g., Stanley, 178 F.3d at 1080 ("Furthermore, the imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area. While we reject Stanley's claims, we also note that they raise important issues and that the answers were far from obvious. Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since Brown v. Board of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954)."). This case raised important and in some instances novel issues regarding race discrimination in transportation funding. Imposition of a cost award in the relatively high amount taxed by the Clerk on Plaintiffs of modest means could chill litigation in this area. While MTC argues that the statutory limitation on cost awards alleviates any chilling effect (see Opp. at 3), the Ninth Circuit has already concluded that cost awards have the potential to chill civil rights enforcement cases. See Mexican-American Educators, 231 F.3d at 592.

Third, the economic disparity between the organizational Plaintiffs and MTC provides another reason to deny a cost award. A court abuses its discretion when it awards costs against a losing plaintiff without considering the plaintiff's limited financial resources. See Mexican-American Educators, 231 F.3d at 592; Stanley, 178 F.3d at 1079-80.

The organizational Plaintiffs rely on the amended declarations of Bill Gallegos from CBE and Deborah Johnson from ATU 192 that were submitted in connection with the motion for attorneys' fees to demonstrate that Plaintiffs have extremely limited resources from which to pay

4

any cost award.[1]  These declarants are sufficiently knowledgeable about the finances of each group to testify to the effects of payment of a large cost award.

Mr. Gallegos states that CBE is a non-profit environmental health and justice organization whose funding comes primarily from grants, charitable donations and attorney's fees.  See Am. Gallegos Decl. ¶¶ 2, 6.  CBE does not have a financial reserve that could be used to satisfy a cost award.  See id. ¶ 5.  CBE began 2009 with unrestricted funds of just over $42,000, which has already been assigned in the 2009 budget.  See id. ¶ 9.  Revenue from recovered attorney's fees is relatively limited.  Holding CBE liable for MTC's costs in this case would be "financially crushing."  See Am. Gallegos Decl.  ¶ 16.

Ms. Johnson states that ATU 192 is a labor organization that engages in "such legislative, political, educational, cultural, social, and welfare activities as will further the interests and welfare of the membership of the organization."  See Am. Johnson Decl. ¶ 2.  As of December 31, 2008, ATU 192 had negative net assets in the amount of -$43,913, and does not have any financial reserves.  See id. ¶ 4; Ex. A.  Holding ATU 192 liable for MTC's costs would be "devastating financially to ATU 192 and dramatically impair its ability to carry out its mission of representing its members."  See id. ¶ 8.  While MTC argues that Ms. Johnson's declaration is largely subjective opinion and ATU 192 has assets and liabilities shows $625,898 in assets, including $127,072 in cash, the overall financial picture shows negative net assets as stated in the Johnson declaration.  See Am. Johnson Decl. Ex. A.

MTC argues that there is no massive economic disparity between the parties, and that its own resources are limited.  MTC is a public agency organized under California law, funded with taxpayer dollars and not operated for profit.  Declaration of Francis Chin ¶ 4.  MTC's staff numbers approximately 160 employees, who are often overstretched in fulfilling MTC's responsibilities to the public and transit operators.  Id. ¶¶ 5-6.  MTC was forced to expend a significant amount in

---

[1] MTC filed objections to these declarations that "substantially track the objections previously filed by MTC at Docket No. 424 [in connection with MTC's Motion for Attorneys' Fees], with changes based on Plaintiffs' amendments."  See MTC's Objections to Amended Declarations of Bill Gallegos and Deborah Johnson at 2.  The Court gave Plaintiffs leave to file a response to MTC's objections by July 23, 2009.  No response was filed.  Because the objections are essentially the same as the prior objections that the Court largely overruled, the Court adopts the rulings made on the earlier objections in its July 7, 2009 Order Re: Defendant's Objections to Evidence (docket no. 453).

defense of this lawsuit, including costs in excess of $900,000. Id. ¶ 7. Absent from MTC's evidence, however, is any information about MTC's specific financial resources. In summary, while the disparity between the parties' resources is not as great as between the plaintiffs and the State of California in Mexican-American Educators, or the plaintiff and the City and County of San Francisco in Washburn, a disparity remains and weighs somewhat in favor of denying costs.

Fourth, Plaintiffs' claims in this case were not without merit. The Court denied MTC's motion for summary judgment as to some of Plaintiffs' claims, and the Court concluded at trial that Plaintiffs had stated a prima facie case as to one of the challenged practices. Further, this case may have had some salutary impact on MTC. See Mar. 27, 2009 Findings of Fact and Conclusions of Law at 4 ("It is worth pointing out that the Court's conclusion is supported in part by MTC's recent practice, commenced the same year that this lawsuit was filed, of allowing more operating funds in the form of preventive maintenance to low to AC Transit than MTC allowed under its previous practice of reserving such funds for capital rehabilitation only. Indeed, this lawsuit may have had some salutary impact on causing MTC to refine such policies.").

Finally, Plaintiffs' claims in this case presented complex questions. Although the Court granted summary judgment in favor of MTC with respect to Plaintiffs' intentional discrimination claim, that claim was not wholly meritless, and the rest of Plaintiffs' claims proceeded to trial. The issues presented in this case were complex and required close attention to detail, including an understanding of the multiple sources and restrictions involved in the transit funding process. Resolution of those issues was not obvious. While complexity by itself does not automatically warrant denial of costs (see Save Our Valley, 335 F.3d at 946), this factor in combination with the other reasons stated above supports denial of a cost award. Moreover, this case was vigorously litigated.

//
//
//
//
//

6

For the foregoing reasons, Plaintiffs' Motion for Review of Clerk's Taxation of Costs is granted, and the Court declines to award costs.  Accordingly, Defendants' Motion to Review Clerk's Taxation of Costs is denied as moot.

**IT IS SO ORDERED.**

Dated: August 4, 2009

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge